# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HINDS INVESTMENTS, L.P., et al., | CASE NO. CV F 07-0703 LJO GSA |
| Plaintiffs, | **ORDER ON KIRRBERG/MULTIMATIC'S F.R.Civ.P. 12 MOTION TO DISMISS** (Doc. 78.) |
| vs. | |
| TEAM ENTERPRISES, INC., et al, | |
| Defendants. | |
| _____/ | |
| AND RELATED CROSS-ACTIONS AND THIRD-PARTY ACTIONS. | |
| _____/ | |

## INTRODUCTION

Defendants Kirrberg Corporation and Multimatic LLC (collectively "Kirrberg/Multimatic") seek to dismiss plaintiffs' hazardous substances clean up contribution claims on grounds that plaintiffs' operative Second Amended Complaint ("SAC") lacks allegations to render Kirrberg/Multimatic liable under federal and state law, including the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq., the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, et seq., and the California Hazardous Substance Account Act ("HSAA"), California Health & Safety Code, §§ 25300-25395.45.  Plaintiffs respond that Kirrberg/Multimatic

manufactured the dry cleaning machine at issue and prepared operating instructions to discharge hazardous substances into the environment to subject Kirrberg/Multimatic to CERCLA, RCRA, HSAA and other liability. This Court considered Kirrberg/Multimatic's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the March 17, 2010 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES plaintiffs' claims against Kirrberg/Multimatic.

## BACKGROUND[1]

### The Parties

Plaintiffs are Hinds Investments, L.P. ("Hinds") and Patricia MacLaughlin ("Ms. MacLaughlin"). Hinds owns Clovis and Fresno commercial properties ("properties") which defendant Team Enterprises, Inc.("Team") and others leased from Ms. MacLaughlin's predecessor[2] to operate dry cleaners during 1974-2001. Hinds and Ms. MacLaughlin (collectively "plaintiffs") pursue claims against Team, Kirrberg/Multimatic and other defendants to recover costs to remediate contamination at the properties from perchloroethylene ("PCE"), a volatile organic compound used in dry cleaning and a hazardous substance.

### The Multimatic Solo Plus 35 Dry Cleaning Machine

During at least 1978-1990, Team used at the properties a Multimatic Solo Plus 35 dry cleaning machine ("Multimatic machine"), which used PCE and was manufactured by Kirrberg/Multimatic and/or its predecessors.[3] The SAC alleges that Kirrberg/Multimatic "manufactured, assembled, installed, maintained, repaired and/or sold dry cleaning machines and provided instruction and information as to the handling and disposal of wastewater from said dry cleaning machines, including Multimatic dry cleaning machines that were installed and operated in the dry cleaning stores at the properties."

The SAC further alleges that:

    1.    Kirrberg/Multimatic "authored, prepared, edited, or otherwise arranged for the product

---

[1]    The factual recitation is derived generally from the SAC, the target of Kirrberg/Multimatic's challenges.

[2]    Ms. MacLaughlin is the successor-in-interest to now deceased Thomas F. Hinds, who leased the properties to Team. Ms. MacLaughlin is the trustee for the Thomas F. Hinds and Mary Jane Hinds Living Trust.

[3]    For ease, reference to "Kirrberg/Multimatic" will include predecessors. Kirrberg/Multimatic note that defendant Multimatic Dry Cleaning Machine Corporation merged into defendant Multimatic Corporation, which changed its name to The Kirrberg Corporation, making The Kirrberg Corporation the only existing entity of the three.

manual for the Multimatic Solo Plus 35 to be produced and given or otherwise transferred to the buyers, users and/or owners" of the Multimatic machine;

2.    "The manual directed that waste water, containing PCE that had been used in the machine, must be discharged into an open drain";

3.    The "Instruction and Maintenance Manual" for the Multimatic machine "instructed that the PCE-laden waste water from the dry cleaning machine must flow into an open drain: '[T]he outflowing waste water from the water separator is contaminated and cannot be used again. Waste water must flow into an open drain'";

4.    Kirrberg/Multimatic "made a conscious decision to discharge used PCE, contained in separator water, down the drain";

5.    The Multimatic machine "performed a separate and distinct function of waste disposal when it disposed of used PCE (PCE that had cleaned the clothes and was contained in separator waste water) into drains";

6.    The Multimatic machine was "a dry cleaning machine and a waste disposal machine";

7.    Kirrberg/Multimatic "arranged for and controlled the disposal of PCE waste; and contributed to the contamination of the environment" at the properties.

Plaintiffs claim that by "expelling contaminated water," the Multimatic machine "created waste and performed waste disposal" when the Multimatic machine "disposed of used PCE (PCE that had already cleaned clothes and was contained in separator waste water) into drains."

**Plaintiffs' Claims**

According to the SAC, this "action arises out of the need to clean up and remediate environmental contamination caused by the operations" of Team's "dry cleaning establishments." The SAC alleges against Kirrberg/Multimatic claims under CERCLA, RCRA, HSAA and California common law and for declaratory relief and attorney fees, which will be addressed below.

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion Standards**

Kirrberg/Multimatic fault the SAC for attempting to impose liability on Kirrberg/Multimatic as an "arranger" for disposal of PCE waste under CERCLA and HSAA in that Kirrberg/Multimatic are not

3

arrangers "as a matter of law."  Kirrberg/Multimatic contend that plaintiffs "mischaracterize" the Multimatic machine as a "waste disposal machine."  Plaintiffs respond that Kirrberg/Multimatic "arranged for and controlled the disposal of PCE" at the properties and "contributed to the contamination" of the properties" to subject Kirrberg/Multimatic to CERCLA and RCRA liability.

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to Kirrberg/Multimatic's challenges to the claims against them.

/ / /

/ / /

5

**Responsible CERCLA Parties**

The SAC's (first) CERCLA contribution claim under 42 U.S.C. § 9607(a)[4] alleges that Kirrberg/Multimatic and other defendants "are responsible for arranging of disposal of PCE which were Releases or Threatened Releases of PCE" from the properties and "are liable to Plaintiffs for all necessary Response Costs incurred by Plaintiffs in responding to the released Hazardous Substances."

CERCLA was enacted in 1980 to provide effective responses to health and environmental threats posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 502 F.3d 781, 792 (9th Cir. 2007), *reversed on other grounds*, __ U.S. __, 129 S.Ct. 1870 (2009). Under CERCLA, federal and state governments may initiate cleanup of toxic areas and sue potentially responsible parties for reimbursement. *Burlington Northern*, 502 F.3d at 792. A key CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal of the wastes that caused the harm." *EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 897 (5th Cir. 1993). CERCLA is a "super-strict" liability statute. *Burlington Northern*, 502 F.3d at 792. "[L]iability is joint and several when the harm is indivisible." *Burlington Northern*, 502 F.3d at 793.

Section 9607(a) identifies the following as "covered persons" subject to CERCLA contribution claims:

> (1) the **owner and operator** of . . . a facility,
>
> (2) any person who at the time of disposal of any hazardous substance **owned or operated any facility** at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise **arranged for disposal or treatment**, or **arranged** with a transporter **for transport for disposal or treatment**, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances ["arrangers"], and
>
> (4) any person who **accepts or accepted** any hazardous substances **for transport** to disposal or treatment facilities . . . or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ["transporters"] . . . (Bold added.)

---

[4] Unless otherwise noted, all further statutory references will be to CERCLA, United States Code, Title 42.

Section 9613(f)(1) authorizes contribution claims:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

To plead a prima facie contribution case against Kirrberg/Multimatic, plaintiffs must prove that Kirrberg/Multimatic are "within one of four classes of persons subject to CERCLA's liability provisions." *California Dept. of Toxic Substances Control v. Payless Cleaners*, 368 F.Supp.2d 1069, 1076 (E.D. Cal. 2005). Although section 9607 creates the right of contribution, the "machinery" of section 9613 "governs and regulates such actions, providing the details and explicit recognition that were missing" from section 9607. *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997), *cert. denied*, 524 U.S. 937, 118 S.Ct. 2340 (1998). As such, if an entity is not a covered person under section 9607, that entity is not subject to section 9613 contribution liability because 9607 creates the section 9613 contribution right.

## **CERCLA Arranger Liability**

### *Intentional Disposal*

Kirrberg/Multimatic contend that they "are not, as a matter of law, 'arrangers'" subject to CERCLA liability which "cannot be predicated on mere knowledge of likely leaks or spills following a sale of a product." Kirrberg/Multimatic point to the U.S. Supreme Court's recent explanation that "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington Northern and Sante Fe Railway Co. v. United States*, __ U.S. __, 129 S.Ct. 1870, 1879 (2009).

In *Burlington Northern*, __ U.S. __, 129 S.Ct. 1870, the U.S. Supreme Court held that pesticide manufacturer Shell Oil Company was not an arranger despite its knowledge of pesticide spills during transfers and deliveries, and due to equipment failures. The U.S. Supreme Court explained:

> While it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, **knowledge alone is insufficient to prove that an entity "planned for" the disposal**, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify

as an arranger, Shell must have entered into the sale of [its product] **with the intention** that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3).

. . . Shell's **mere knowledge** that spills and leaks continued to occur is insufficient grounds for concluding that Shell 'arranged for' the disposal of [a hazardous substance] with the meaning of § 9607(a)(3).

*Burlington Northern*, __ U.S. __, 129 S.Ct. at 1880 (Bold added).

Kirrberg/Multimatic criticize the SAC's absence of "requisite intent" required by *Burlington Northern* and reliance on "over-simplified allegations" that Kirrberg/Multimatic manufactured the Multimatic machine which was installed pursuant to Kirrberg/Multimatic specifications. Kirrberg/Multimatic take issue with the SAC's conclusion that Kirrberg/Multimatic "made a conscious decision to discharge used PCE simply because the manual directed that wastewater flow into an open drain," which "cannot possibly in logic mean the sewer line as Plaintiffs insinuate."

Plaintiffs attribute to Kirrberg/Multimatic "intentional steps" to dispose of PCE in that the Multimatic machine's purpose "was to get rid of PCE." Plaintiffs argue that the SAC alleges facts to "fit" with the U.S. Supreme Court's definition of arranger in that Kirrberg/Multimatic sold the Multimatic machine "with the intention that at least a portion" of the PCE "would be disposed of" into the environment during the Multimatic machine's operation. Plaintiffs note the Multimatic machine's function "was to discharge wastewater, containing used PCE, into the environment (either down the drain and into a sewer; or into a bucket to be dumped down the drain and into a sewer)." Plaintiffs rely on the following from *Morton International, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 678 (3rd Cir. 2003):

Second, proof of a defendant's knowledge that hazardous waste can or will be released in the course of the process it has arranged for, provides a good reason to hold a defendant responsible because such proof demonstrates that the defendant knowingly (if not personally) contributed to the hazardous-waste contamination. Thus, general knowledge that waste disposal is an inherent or inevitable part of the process arranged for by the defendant may suffice to establish liability

However, plaintiffs quote the above out of context and omit the Third Circuit Court of Appeals' preceding explanation:

We believe that ownership or possession, knowledge, and control are the most critical factors in this analysis for the following reasons. First, proof of ownership, or at least possession, of the hazardous substance is required by the plain language of the

statute. *See* 42 U.S.C. § 9607(a)(3) ("any person who . . . arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person . . . .) (emphasis added). This required factor is the starting point in determining "arranger liability" because, of course, with ownership comes responsibility. *See Aceto*, 872 F.2d at 1382 (imposing "arranger liability" upon defendant that owned hazardous substance throughout formulation process because finding otherwise "would allow defendants to simply 'close their eyes' to the method of disposal of their hazardous substances").

*Morton*, 343 F.3d at 678.

Plaintiffs conveniently ignore the ownership/possession factor of arranger liability. The SAC fails to allege that Kirrberg/Multimatic owned or possessed PCE or PCE-laced water. The operators of the Multimatic machine arguably owned or possessed PCE or PCE-laced water. Based on the SAC, Kirrberg/Multimatic at best knew that the Multimatic machine, using the SAC's words, "performed a separate and distinct function of waste disposal when it disposed of used PCE (PCE that had cleaned the clothes and was contained in separator water) into drains." The SAC fails to substantiate that Kirrberg/Multimatic knew how a Multimatic machine operator would dispose of the "waste" to rise to the level of intentional disposal of a hazardous substance.[5]

Kirrberg/Multimatic raise a valid point that "knowledge of likely disposal" does not impose arranger liability given that "knowledge alone is insufficient to prove that an entity 'planned for' the disposal." *Burlington Northern*, __ U.S. __, 129 S.Ct. at 1880. Furthermore, plaintiffs' points of

---

[5]     Moreover, this Court is troubled by plaintiffs' incomplete case quotations to attempt to support their points. Plaintiffs failed to include in their original opposition papers the following bold language from *Vine Street, LLC v. Keeling,* 460 F.Supp.2d 728, 752 (E.D. Tex. 2006), to distort the import of the quotation in plaintiffs' opposition:

> **Unlike the plaintiff in R.R. Street, given Norge's substantial involvement in the design of its franchise and the machines' actual installation,** College Cleaners had no practical choice as to how to dispose of the wastewater. Flushing the wastewater to the sewer was not a recommendation or advice, but rather an integral part of Norge's design for the dry-cleaning system and the dry-cleaning facility. Norge's activities here demonstrate that it had the authority to and did exercise actual control over the specific method and manner of the PERC's disposal. Norge was actually involved in deciding how to dispose of that wastewater and the PERC contained therein. Therefore, Norge (and thus Borg-Warner) arranged for the disposal of the PERC.

This Court admonishes counsel that counsel "[s]hall not intentionally misquote to a tribunal the language of a book, statute, or decision." Cal. Rule of Prof. Resp. 5-200(C). This Court will not tolerate such abrogation of legal ethics. This Court recognizes that plaintiffs' counsel filed amended papers to attempt to cure the distortion, however, such attempt was belated given that it was made after this Court brought the matter to the attention of plaintiffs' counsel in a prior order.

intentional PCE disposal are negated by the absence of SAC allegations that Kirrberg/Multimatic installed the Multimatic machine, connected it to floor drains, directed waste disposal from the Multimatic machine, or inspected the Multimatic machine and its waste disposal.

### *Useful Product Defense*

Kirrberg/Multimatic contend that the dry cleaning equipment "is a useful product that, when sold, is not waste" and relies on the useful product defense for the Multimatic machine. Kirrberg/Multimatic argue that the useful product defense shields a manufacturer/seller of dry cleaning equipment who "does nothing more than sell a new product."

Plaintiffs respond that the useful product defense does not apply in that the Multimatic machine's purpose "was to get rid of used PCE."

"A person may be held liable as an 'arranger' under § 9607(a)(3) only if the material in question constitutes 'waste' rather that a 'useful product.'" *Cal. Dept. of Toxic Substances v. Alco Pacific, Inc.*, 508 F.3d 930, 934 (9th Cir. 2007). The useful product defense "applies when the sale is of a new product, manufactured specifically for the purpose of sale, or of a product that remains useful for its normal purpose in its existing state." *California v. Summer Del Caribe, Inc.*, 821 F.Supp. 574, 581 (N.D. Cal. 1993).

"The vendor of a useful product which through its normal course produces a hazardous substance, such as a battery, is not an arranger under CERCLA." *Payless Cleaners*, 368 F.Supp.2d at 1077 (citing *Cadillac Fairview/Cal., Inc. v. United States*, 41 F.3d 562, 566 (9th Cir.1994)). A manufacturer of PCE cannot be held liable "as a CERCLA arranger where it has done nothing more than sell a useful chemical." *Payless Cleaners*, 368 F.Supp.2d at 1077; *see Adobe Lumber v. Hellman*, 415 F.Supp.2d 1070, 1081 (E.D. Cal. 2006) ("the manufacturer of dry cleaning equipment who does nothing more than provide the machines and operating instructions is not an 'arranger' of waste disposal under CERCLA"), *vacated on other grounds sub nom. Kotrous v. Goss-Jewett Co.*, 523 F.3d 924, 934 (9th Cir. 2008).

Kirrberg/Multimatic note that the useful product defense arises out of CERCLA's definition of

/ / /

/ / /

"disposal" (Section 9601(29))[6] in that merely identifying a "hazardous substance" is insufficient to establish that its placement in a facility constitutes "disposal of any hazardous substance" under CERCLA. *See 3550 Stevens Creek Assocs. v. Barclays Bank of Calif.*, 915 F.2d 1355, 1360-1361 (9th Cir. 1990), *cert. denied*, 500 U.S. 917, 111 S.Ct. 2014 (1991). For CERCLA purposes, "disposal" is construed "as referring only to an affirmative act of discarding a substance as waste, and not to the productive use of the substance." *3550 Stevens Creek*, 915 F.2d at 1362. As such, Kirrberg/Multimatic argue that a new product is not a waste and that the productive use of a substance is not disposal to generate CERCLA liability.

Kirrberg/Multimatic focus on "the disposal of 'waste'" for CERCLA liability. In the CERCLA context, "hazardous substances are generally dealt with at the point when they are about to, or have become, wastes." *3550 Stevens Creek*, 915 F.2d at 1362. Congress did not intend CERCLA to target legitimate manufacturers or sellers of useful products but rather desired "to hold liable those who would attempt to dispose of hazardous wastes or substances under various deceptive guises in order to escape liability for their disposal." *Dayton Independent School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1065-1066 (5th Cir. 1990).

Acknowledging its "expansive view of arranger liability," the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808 (italics in original). "Useful product" cases recognize that "liability cannot extend so far as to include *all* manufacturers of hazardous substances, on the theory that there will have to be disposal of the substance some time down the line, *after* it is used as intended." *Burlington Northern*, 502 F.3d at 808 (italics in original).

Kirrberg/Multimatic challenge as unprecedented and "contrary to "CERCLA's intent" the SAC's attempt to characterize Kirrberg/Multimatic as an "arranger" "purely based on . . . manufacture and sale of dry cleaning equipment with accompanying installation and waste disposal instructions."

---

[6]     CERCLA borrows the Solid Waste Disposal Act's definition of "disposal" which "means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3).

Kirrberg/Multimatic note the SAC's failure to allege that Kirrberg/Multimatic "actually installed the machines and physically directed waste lines" for disposal or "actually possessed PCE or physically disposed of PCE at any time." Kirrberg/Multimatic contest arranger liability based on the Multimatic machine's design to use PCE and generation of PCE waste "at a later point in time following the sale."

Plaintiffs caution this Court "to look beyond the actual sale to determine if the disposal of a hazardous substance was arranged through the transaction." Plaintiffs argue that a product vendor "may be liable as an arranger when the disposal of waste is a substantial part of the transaction." Plaintiffs contend that Kirrberg/Multimatic's "direction to dispose of the separator water either directly into the sewer or into a bucket before placing the separator water into the sewer, and the lack of a practical alternative to dispose of the separator water combine to create an 'arrangement' for the disposal of PCE into the environment."

Plaintiffs offer nothing substantial to negate the useful product defense. The SAC alleges that Kirrberg/Multimatic manufactured the Multimatic machine. The SAC does not allege that the Multimatic machine itself is a hazardous substance and in turn, that its sale is an arrangement to dispose of hazardous substances. The transaction at issue here is the sale of the Multimatic machine, an event which neither produces nor involves hazardous substances directly. The SAC fails to allege facts that Multimatic machine manufacture or sale constitutes "arrangement for the ultimate disposal of a hazardous substance." *Payless*, 368 F.Supp.2d at 1077. Even looking "beyond the actual sale," the SAC offers nothing to suggest that "disposal of a hazardous substance was arranged through the transaction." *Payless*, 368 F.Supp.2d at 1077. The analysis of a fellow judge of this Court rings true here: "Peters [parties seeking to impose CERCLA arranger liability] do not allege any facts to support a finding that a substantial part of Maytag's sale of the dry cleaning machines involved the arrangement for the disposal of waste water. Rather, Maytag's transaction can be described only as the sale of a useful good which, through its normal use, created a waste byproduct. Under these facts alone, Maytag may not be held liable as a CERCLA arranger." *Payless*, 368 F.Supp.2d at 1078. Plaintiffs' notion that "*Payless Cleaners* is no longer good law" is invalid and unsupported. Plaintiff's place dubious reliance on *Berg v. Popham*, 113 P.3d 604, 612 (2005), which addresses an impertinent Alaskan statute and was decided prior to the U.S. Supreme Court's *Burlington Northern* decision. The SAC's (first) CERCLA arranger

12

1  claim fails as to Kirrberg/Multimatic.[7]

2  **CERCLA Declaratory Relief**

3  The SAC's (second) declaratory relief claim seeks declaratory judgment pursuant to section

4  9613(g)(2) "of the liability of defendants to plaintiffs for all Response Costs incurred or to be incurred

5  by plaintiffs in implementing the remedial action plan approved by this Court for responding to the

6  Releases of Hazardous Substances."

7  Section 9613(g)(2) empowers a court to "enter a declaratory judgment on liability for response

8  costs or damages that will be binding on any subsequent action or actions to recover further response

9  costs or damages."

10  Kirrberg/Multimatic argue that in the absence of its section 9607 liability, "Plaintiffs are

11  categorically barred from the requested declaratory relief." *See Union Station Associates, LLC. v. Puget*

12  *Sound Energy, Inc.*, 238 F.Supp.2d 1226, 1230 (W.D. Wash. 2002) ("Given that the Court granted

13  partial summary judgment disposing of Union's § 107 claim for cost recovery, and with this order

14  dismisses Union's § 113(f) claim, no substantive federal claims exist upon which to base Union's

15  declaratory judgment claims. The declaratory judgment causes of action are therefore dismissed.")

16  Kirrberg/Multimatic are correct, and plaintiffs appear to concede that potential section 9613 relief

17  is tethered to a viable section 9607 claim.   In the absence of viable CERCLA liability,

18  Kirrberg/Multimatic is not subject to CERCLA declaratory relief to warrant dismissal of the SAC's

19  (second) declaratory relief claim against Kirrberg/Multimatic.

20  **RCRA Claim**

21  The SAC's (third) RCRA claim under 42 U.S.C. § 6972(a)(1) alleges that Kirrberg/Multimatic

22  and the other defendants "have contributed to the past and present handling, storage, treatment,

23  transportation or disposal of hazardous waste ("PCE"), which may present an imminent and substantial

24  endangerment to health or the environment."

25  ***Generator***

26  Plaintiffs invoke 42 U.S.C. § 6972(a)(1)(B) ("section 6972(a)(1)(B)"), which permits a civil

27  

28  ---
   [7]      Plaintiffs' notion that Kirrberg/Multimatic qualifies as a section 9607(a)(1) operator is not taken seriously given the SAC's failure to characterize Kirrberg/Multimatic as an operator and plaintiffs' half-hearted, meritless points.

action against "any person . . . including any past or present **generator** who has **contributed** or who is **contributing** to the past or present handling, storage, **treatment**, transportation, or **disposal** of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." (Bold added.) Plaintiffs characterize Kirrberg/Multimatic as a generator, which is defined as "any person, by site, whose act or process produces hazardous waste . . ." 40 C.F.R. § 260.10. Plaintiffs contend that Kirrberg/Multimatic constitute a generator in that the Multimatic machine's purpose "was to discharge contaminated separator water (containing used PCE) into the environment."

To support their generator contention, plaintiffs point to the following explanation from a fellow district court:

> Congress expressed its intent that RCRA apply to: (1) those who create solid waste, (2) those who transport or handle it during its life, and (3) those who provide a final resting place for such waste.
>
> Additionally, among those specifically included in the definition of "any persons" are "generators." *See* 42 U.S.C. § 6972(a)(1)(B) (1983 & Supp.1991). As a result, the Court is further persuaded that RCRA applies to individuals who do no more than create solid waste. The Court simply will not accept defendants' interpretation of the statute which would allow individuals to create solid waste, and avoid the requirements of RCRA by never making any attempt to clean up the mess. Clearly such a result is not what was intended by a statute that desires to reduce "the amounts of solid waste that are generated."

*Zands v. Nelson*, 779 F.Supp. 1254, 1263-1264 (S.D. Cal. 1991); *see U.S. v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 741 (8th Cir. 1986) (RCRA's intention is "to impose liability upon past non-negligent off-site generators and transporters of hazardous waste").

Kirrberg/Multimatic note that plaintiffs must allege that Kirrberg/Multimatic qualifies as more than a "generator" in that section 6972(a)(1)(B) requires that the generator "contributed to . . . the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and a substantial endangerment to health or the environment." *California Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp.*, 298 F.Supp.2d 930, 978 (E.D. Cal. 2003) (quoting 42 U.S.C. § 6972(a)(1)(B)).

Plaintiffs pinpoint no SAC allegations to qualify Kirrberg/Multimatic as RCRA generators. Plaintiffs appear to claim Kirrberg/Multimatic are RCRA generators because they failed to "clean up the mess." Kirrberg/Multimatic apply a non-analogous quote from *Zach* to claim Kirrberg/Multimatic

14

are RCRA generators. Such application is unavailing given that the SAC fails to allege that Kirrberg/Multimatic "created" solid waste in that PCE creation is dependent on Multimatic machine use and operation by someone other than Kirrberg/Multimatic. The SAC fails to establish that Kirrberg/Multimatic are subject to RCRA liability as generators.

### Contribution To Treatment And Disposal Of Hazardous Waste

Plaintiffs argue that Kirrberg/Multimatic contributed to treatment and disposal of hazardous waste at the properties by manufacturing the Multimatic machine "to dispose of waste water into the environment and directing operators to discharge that water."

The "phrase 'contributed to' the contamination on-site suggests 'some level of causation between the contamination and a party to be held liable.'" *Interstate Non-Ferrous Corp.*, 298 F.Supp.2d at 979 (quoting *Hudson Riverkeeper Fund, Inc. v. Atlantic Richfield Co.*,138 F.Supp.2d 482, 487 (S.D.N.Y. 2001)). In *Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008), the Seventh Circuit Court of Appeals summarized necessary causation for an RCRA claim:

> A plain reading of the "has contributed or is contributing" language of § 6972(a)(1)(B) compels us to find that RCRA requires active involvement in handling or storing of materials for liability. The ordinary meaning of "contribute" is "to act as a determining factor." *Webster's II New College Dictionary* (2005). By definition, the phrase "has contributed or is contributing" requires affirmative action. The vast majority of courts that have considered this issue read RCRA to require affirmative action rather than merely passive conduct . . .

The Eighth Circuit Court of Appeals has also weighed in on interpretation of section 6972(a)(1)(B)'s "contributing to":

> Although the phrase "contributing to" is not defined by the statute, its plain meaning is "to have a share in any act or effect." Webster's Third New International Dictionary 496 (1961). "To have a share in" is arguably less involvement than might be required by the plain meaning of the phrase "to arrange": "to make plans, prepare," . . .

*U.S. v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1384 (8th Cir. 1989).

A fellow district court has explained that a "straightforward reading of RCRA compels a finding that only active human involvement with the waste is subject to liability" under section 6972(a)(1)(B). *Interfaith Community Organization v. Honeywell International, Inc.*, 263 F.Supp.2d 796, 844 (D. N.J. 2003). " Congress intended to impose liability only where a person is shown to have affirmatively acted as a determining factor over the waste management activities . . ." *Interfaith Community*, 263 F.Supp.2d

15

at 844.

Kirrberg/Multimatic argue that the SAC fails to satisfy RCRA required "active involvement" based on limited allegations that Kirrberg/Multimatic "manufactur[ed] a single piece of equipment that generated PCE-containing water as a side effect and provided instructions through an operation manual for its handling." Kirrberg/Multimatic note the absence of their liability arising from "dry cleaning operators' independent acts of discharging waste into the sewer" and the lack of SAC allegations that "Kirrberg/Multimatic actually discharged such PCE-containing water into the sewer."

Plaintiffs claim that section 6972(a)(1)(B) "imposes liability on those who 'contribute' to the discharge of hazardous waste – and is not limited to those who 'cause' the discharge of hazardous waste." Plaintiffs argue that section 6972(a)(1)(B)'s "contributing to" phrase requires a "nexus between the defendant and the waste at issue" and must be interpreted liberally. Plaintiffs point to the Senate Report: "Some terms and concepts, such as persons 'contributing to' disposal resulting in a substantial endangerment, are meant to be more liberal than their common law counterparts. For example, a company that generated hazardous waste might be someone 'contributing to' an endangerment . . . even where someone else deposited the waste in an improper disposal site . . . where the generator had knowledge of the illicit disposal or failed to exercise due care in selecting or instructing the entity actually conducting the disposal." S.Rep.No.172, 96th Cong., 2d Sess. 5, reprinted in (1980) U.S.Code Cong. & Ad.News 8665, 8669. Plaintiffs claim "a strong nexus – actual causation – between Multimatic and the contamination" in that the Multimatic machine discharged "water saturated with PCE into a floor drain" to result in contamination. Plaintiffs further argue that although Kirrberg/Multimatic did not operate the Multimatic machine, Kirrberg/Multimatic contributed to the property's contamination as "a natural consequence of the use of the manufactured device."

This Court agrees with plaintiffs as to a nexus between defendant and the waste or a "level of causation between the contamination and a party to be held liable." *Interstate Non-Ferrous Corp.*, 298 F.Supp.2d at 979. However, the problem for plaintiffs is the SAC's absence of allegations of "active involvement in handling or storing of materials." *Sycamore Indus. Park*, 546 F.3d at 854. The SAC does not allege that Kirrberg/Multimatic handled or stored PCE or engaged in similar affirmative action. For RCRA purposes, the SAC reveals Kirrberg/Multimatic's passive conduct limited to manufacture of

the Multimatic machine which was operated by others. Kirrberg/Multimatic did not generate or dispose of a hazardous substance or engage in waste management activities. Moreover, manufacture of the Multimatic machine is not analogous to the leaking underground storage tank at issue in *Agricultural Excess & Surplus Ins. Co. v. A.B.D. Tank & Pump Co.*, 878 F.Supp. 1091 (N.D. Ill. 1995), in that a storage tank constitutes active and affirmative involvement in storage or disposal of hazardous waste. Plaintiffs' reliance on the unpublished *City of Stamps, Ark. v. Alcoa, Inc.*, 2006 U.S. Dist. LEXIS 27201 (W.D. Ark. 2006), is unavailing given that the case addressed transporters and issues irrelevant to those at hand. Plaintiffs fail to establish that the SAC alleges a viable RCRA claim against Kirrberg/Multimatic.

Moreover, the Ninth Circuit has indicated that it would not hold manufacturers liable as RCRA contributors given that under its "expansive view of arranger liability" under CERCLA, the Ninth Circuit has "refused to hold manufacturers liable as arrangers for selling a useful product containing or generating hazardous substances that *later* were disposed of." *Burlington Northern*, 502 F.3d at 808 (italics in original). A fellow district court agrees with this point:

> Although the statutory requirements are somewhat different under each statute, the reasons justifying the court's holding that Monsanto did not arrange for disposal within the meaning of CERCLA also foreclose liability for disposal pursuant to RCRA. The sale of a useful product does not constitute the "handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste" required by RCRA. . . .The PCBs sold by Monsanto to its customers were transferred as a valuable commodity and the link between their sale by Monsanto and the ultimate discharge of contaminants, including PCBs, onto the Site is too attenuated to justify imposing liability upon the manufacturer.

*United States v. Union Corp.*, 277 F.Supp.2d 478, 491 (E.D. Pa. 2003).

### Nuisance

The SAC's fourth claim alleges that Kirrberg/Multimatic and the other defendants "have caused a nuisance to exist, by virtue of the contamination," including "the continuing discharge of PCE into groundwater."

Kirrberg/Multimatic fault the nuisance claim in that the SAC essentially alleges, in Kirrberg/Multimatic's words, that "Kirrberg/Multimatic placed into the stream of commerce equipment that generated wastewater containing PCE, coupled with informing users of disposal methods" and such "passive involvement does not constitute taking affirmative steps toward improper discharge."

17

Kirrberg/Multimatic point to *City of Modesto Redevelopment Agency v. Superior Court*, 119 Cal.App.4th 28, 13 Cal.Rptr.3d 865 (2004), where the California Court of Appeal addressed a California hazardous substances remediation and recovery statute. The California Court Appeal noted that in construing the statute "in light of the common law principles" on nuisance, "we conclude that those who took affirmative steps directed toward the improper discharge of solvent wastes – for instance, by manufacturing a system designed to dispose of wastes improperly or by instructing users of its products to dispose of wastes improperly – may be liable under that statute, but those who merely placed solvents in the stream of commerce without warning adequately of the dangers of improper disposal are not liable." *City of Modesto*, 119 Cal.App.4th at 43, 13 Cal.Rptr.3d 865. The California Court of Appeal further observed that conduct "limited to manufacturing or selling solvents to dry cleaners, with knowledge of the hazards of those substances, without alerting the dry cleaners to proper methods of disposal" does not fall "within the context of nuisance." *City of Modesto*, 119 Cal.App.4th at 42, 13 Cal.Rptr.3d 865.

Plaintiffs offer nothing meaningful to challenge Kirrberg/Multimatic's arguments that the SAC fails to allege Kirrberg/Multimatic's nuisance. Plaintiffs rely on a tired refrain that Kirrberg/Multimatic designed the Multimatic machine "to dispose of PCE contaminated water either directly into the sewer system or into a contained [sic] before being placed into the sewer system." In their original opposition papers, plaintiffs again play the game of omitting a key portion of a quoted case passage to distort it.[8] In their original opposition papers, plaintiffs omitted the following bold language from *City of Modesto* and suggested that it did not exist with their inaccurate quotation: **"In harmony with *Selma*, we think a reasonable fact finder might conclude that** defendants who manufactured equipment designed to discharge waste in a manner that will create a nuisance, or who specifically instructed a user to dispose of wastes in such a manner, could be found to have caused or permitted a discharge." Kirrberg/Multimatic correctly highlight the need for "affirmative steps" to impose nuisance liability. *City of Modesto*, 119 Cal.App. 4th at 43, 13 Cal.Rptr.3d 865. Plaintiffs fail to substantiate the nuisance claim to warrants its dismissal, even considering the full quotations from *City of Modesto*.

---

[8] Again, this Court recognizes that plaintiffs filed amended opposition papers **after** the omission issue was raised in a prior order.

## Trespass

The SAC's fifth claim alleges that Kirrberg/Multimatic and the other defendants "have committed a continuing trespass."

Kirrberg/Multimatic argue that the SAC fails to state a common law trespass claim for the same reason the SAC fails to state a nuisance claim.

"California's definition of trespass is considerably narrower than its definition of nuisance." *Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 674, 15 Cal.Rptr.2d 796 (1993). "A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it." *Wilson v. Interlake Steel Co.,* 32 Cal.3d at 233, 185 Cal.Rptr. 280 (citation omitted). "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." *Cassinos v. Union Oil Co.,* 14 Cal.App.4th 1770, 1778, 18 Cal.Rptr.2d 574 (1993) (citation omitted) (trespass where wastewater was injected from defendant's property to plaintiff's, interfering with plaintiff's mineral estate). A trespass "may include wrongful entry or invasion by pollutants." *Martin Marietta Corp. v. Insurance Co. of North America*, 40 Cal.App.4th 1113, 1132, 47 Cal.Rptr.2d 670 (1995).

Citing to California Judicial Council Civil Jury Instruction 2000 – Trespass, Kirrberg/Multimatic hold plaintiffs to establish that Kirrberg/Multimatic "intentionally, recklessly, or negligently caused" PCE to enter the properties. Kirrberg/Multimatic argue that the trespass claim is doomed by its absence of allegations that Kirrberg/Multimatic took "affirmative steps to discharge PCE or to cause PCE to enter the properties."

Plaintiffs respond that Kirrberg/Multimatic took necessary affirmative steps by "manufacturing a system designed to dispose of wastes improperly" or "instructing users of its products to dispose of wastes improperly."

The problem for plaintiffs is that they rest on platitudes. Plaintiffs fail to illustrate "improper" disposal of wastes and rely merely on purported disposal of PCE-laced water by persons other than Kirrberg/Multimatic into the sewer. Kirrberg/Multimatic's alleged conduct fails to substantiate invasion in exclusive possession of land to support a trespass claim.

## Comparative Equitable Indemnity

The SAC's eighth claim alleges that plaintiffs are entitled to "comparative equitable indemnity"

from Kirrberg/Multimatic and the other defendants "for such damages and costs plaintiffs have paid or will pay in excess of his share."

Kirrberg/Multimatic seek dismissal of the state law indemnity claim in absence of "a basis for recovery under federal, state or common law."

California Civil Code section 1432 addresses contribution among joint obligors and provides that "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." Under California Code of Civil Procedure section 875(c), "contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof."

"California law permits a concurrent tortfeasor to obtain equitable indemnity *only* from another concurrent tortfeasor." *General Motors Corp. v. Doupnik*, 1 F.3d 862, 865 (9th Cir. 1993) (italics in original). "[T]here can be no indemnity without liability . . . [U]nless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis of indemnity." *Munoz v. Davis*, 141 Cal.App.3d 420, 425, 190 Cal.Rptr. 400, 403 (1983). "[A] right to indemnify exists only if the injured party has a *legal cause of action* against both the indemnitor and the indemnitee." *Doupnik*, 1 F.3d at 866 (italics in original; names added). The indemnity "doctrine presupposes that 'each of two persons is made responsible by law to an injured party.'" *New Hampshire Ins. Co. v. Sauer*, 83 Cal.App.3d 454, 459, 147 Cal.Rptr. 879, 882 (1978) (citations omitted).

Plaintiffs concede that their "remaining claims" are "derivative" of Kirrberg/Multimatic's liability under CERCLA and RCRA and for trespass and nuisance. In the absence of the predicate liability, the comparative equitable indemnity claim fails, especially given failure to qualify Kirrberg/Multimatic as a concurrent tortfeasor.

**HSAA Response Costs And Declaratory Relief**

The SAC's ninth claims seeks to recover response costs under HSAA and alleges that Kirrberg/Multimatic and the other defendants are "'covered persons' within the meaning of CERCLA, and therefore 'responsible parties' under HSAA and liable to plaintiff for Response Costs and other damages." The SAC's tenth claim seeks pursuant to HSAA (Cal. Health & Saf. Code, § 25363), declaratory relief that defendants are liable for HSAA response costs.

Kirrberg/Multimatic argue that they are not subject to HSAA liability in the absence of "derivative" CERCLA liability in that a "'[r]esponsible party' or 'liable,' person for the purposes of [HSAA], means those persons described" in CERCLA section 9607(a). Cal. Heath & Saf. Code, § 25323.5(a). Kirrberg/Multimatic conclude that in the absence of CERCLA arranger liability, the HSAA claims fail.

Again, the absence of valid CERCLA and RCRA claims dooms plaintiffs' HSAA claims.

### Declaratory Relief

The SAC's eleventh claim seeks "a judicial determination pursuant to California Code of Civil Procedure § 1060 of plaintiffs' right to reimbursement and indemnification by defendants for all costs and attorneys' fees heretofore or hereafter incurred by plaintiffs as a result of defendants' conduct."

Kirrberg/Multimatic likewise seek dismissal of the state law declaratory relief claim in absence of "a basis for recovery under federal, state or common law."

The SAC's reference to a California civil procedure statute is curious given this is a federal action and subject to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, providing in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937). "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994). The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997). A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143-144 (9th Cir. 1994).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The United States Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

Once again, the declaratory relief claim falls with the demise of the CERCLA, RCRA and other claims and the absence of a cognizable justiciable controversy.

**Attorney Fees**

The SAC's twelfth claim seeks recovery of attorney fees under California Code of Civil Procedure section 1021.5 and alleges that plaintiffs' recovery of response costs under CERCLA "confers a benefit on the public by ensuring that those who benefitted from and who are at fault for the Release of Hazardous Substances and Hazardous Wastes into the Environment bear the full costs of such Release."

California Code of Civil Procedure section 1021.5 authorizes an "award of attorneys' fees to a successful party" in an action "which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Kirrberg/Multimatic argue that in the absence of a claim against Kirrberg/Multimatic, plaintiffs are not successful parties entitled to seek attorney fees under the statute. Kirrberg/Multimatic are correct. The attorney fee claim fails.

**CONCLUSION AND ORDER**

For the reasons discussed below, this Court:

1.  DISMISSES this action with prejudice against Kirrberg/Multimatic; and

2.  DIRECTS the clerk to enter judgment in favor of defendants Kirrberg Corporation and

Multimatic LLC and against plaintiffs Hinds Investments, L.P. and Patricia MacLaughlin in that there is no just reason to delay to enter such judgment given plaintiffs' claims against Kirrberg/Multimatic and Kirrberg/Multimatic's alleged liability are clear and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

Dated:     **March 12, 2010**                        **/s/ Lawrence J. O'Neill**
                                                      UNITED STATES DISTRICT JUDGE